1  **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                       FOR THE DISTRICT OF ARIZONA

8
   John Collins,                        )   No. CV-12-2284-PHX-LOA
9                                        )
                Plaintiff,               )   **ORDER**
10                                       )
   vs.                                   )
11                                       )
   Wells Fargo Bank; Velocity Investments)
12 LLC; Gurstel Chargo PA, a Minnesota   )
   corporation,                          )
13                                       )
                                         )
14              Defendants.              )
   _____)

15

16        This case arises on Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") Motion

17 to Dismiss, pursuant to Rules 8, 12(b)(1) and (6), Federal Rules of Civil Procedure,

18 requesting dismissal of *pro se* Plaintiff's Amended Complaint for failure to state a claim

   upon which relief may be granted. (Doc. 14)

19
          Wells Fargo contends it is not a "debt collector" for liability purposes under the
20
   Fair Debt Collection Practices Act ("FDCPA"); the *Rooker-Feldman* doctrine bars
21
   Plaintiff's challenges to a State of Arizona judgment; and Plaintiff has not pled sufficient
22
   facts to support a plausible conspiracy-based claim of liability against Wells Fargo. (*Id.* at
23
   1)  In response, Plaintiff claims Wells Fargo is liable as a co-conspirator with the co-
24
   defendants because Wells Fargo knew Defendant Velocity Investments LLC ("Velocity")
25
   "would use unlawful means to obtain payment of [Plaintiff's] debts, thus making Wells
26
   Fargo an integral actor in this conspiracy[;]" Wells Fargo "*probably* entered an agreement
27
   to target a class or classes of people for debt collection[;]" and Wells Fargo "[w]as
28
   *probably* party to the conspiracy to deprive Collins of his constitutional and civil rights."

1   (Doc. 21 at 2, 4, 13) (emphasis added).

2         After considering the parties' arguments and briefing, the Court finds Plaintiff's

3   Amended Complaint fails to state a plausible claim against Wells Fargo. Wells Fargo's

4   Motion to Dismiss will be granted and the claims against Wells Fargo will be dismissed

5   with prejudice.

6   **I. Background**

7         **A. The State Action**

8         This lawsuit arises out of a collections action brought against Plaintiff, resulting in

9   a judgment in the Arizona courts. According to undisputed, publicly-filed State court

10  documents, Velocity filed suit against Plaintiff on May 9, 2011, in the Oracle Justice

11  Court, Case No. J11005CV20110088 ("the State action"), seeking to collect a credit card

12  debt of $7,240.08. (Docs. 14-1, Exhibit ("Exh.") A at 2-5; 22, ¶ 3 at 1[1])  Velocity

13  acquired Plaintiff's unpaid revolving credit card account from Chase Bank USA, N.A.

14  (*Id.*; Exh. A, ¶¶ 3, 10)  The State action complaint alleged claims for breach of contract

15  and account stated due to Plaintiff's unpaid credit card debt. (*Id.*, ¶¶ 9, 15)  Velocity was

16  the only plaintiff; Plaintiff and "J Doe Spouse" were the only defendants. (*Id.*)  Wells

17  Fargo was never a party in the State action.

18        In the State action, Plaintiff filed a Third Amended Answer in October 2011,

19  which asserted twelve counterclaims against Velocity, its owners, and attorneys, alleging

20  violations of the FDCPA, 15 U.S.C. § 1692 *et seq.*, and claims under 42 U.S.C. § 1985.

21  (Docs. 14-1, Exh. C at 9-30; 22, ¶ 16 at 2)  In this State Answer, Plaintiff entered general

22  denials; admitted he "had a Washington Mutual (WAMU) open account credit card

23  during the period in question[;]" and wrote that because WAMU raised the interest rate

24  on this credit card, Plaintiff would "make no more payments until the interest rate is

25  returned to 10% with no late fees or over limit fees due." (*Id.*, at 9-11) Because Plaintiff's

26

27        [1] Plaintiff's exhibit list, doc. 22 at 1-2, adopted some of the exhibits provided by Wells

28  Fargo, but did not attach duplicative copies.

1    counterclaims sought more than $10,000 in relief, the Oracle Justice Court transferred the

2    case to the Pinal County Superior Court in Florence, Arizona on October 18, 2011. On

3    December 22, 2011, the Superior Court dismissed Plaintiff's counterclaims, and

4    remanded the State action back to the Oracle Justice Court. (Docs. 14-1, Exh. D at 32-33;

5    22, ¶ 19 at 2)  Plaintiff failed to appear for the March 5, 2012 trial. (Docs. 14-1, Exh. E at

6    35-36; 22, ¶ 24 at 2)  Having failed to appear for trial, judgment was entered against

7    Plaintiff on March 5, 2012, in favor of Velocity in the principal sum of $7,240.08, plus

8    pre-judgment interest, Velocity's attorney fees, "for a total judgment in the amount of

9    $11,445.08[,] plus post judgment interest to bear interest at the rate of 4.25% per annum,

10   until paid." (*Id*.) Wells Fargo advises the Court Plaintiff did not appeal the judgment

11   entered in the State action and Plaintiff does not dispute there was no appeal.

12        **B. The Federal Action**

13        On October 25, 2012, *pro se* Plaintiff filed a federal Complaint, alleging 22 counts

14   for relief alleging claims of conspiracy, violations of Plaintiff's right to due process and

15   equal protection, violations of the FDCPA, and abuse of power by two State judges.

16   (Doc. 1)  Plaintiff also requested to proceed *in forma pauperis*. (Doc. 2)  After screening

17   the Complaint per 28 U.S.C. § 1915(e)(2) and finding the Complaint did not comply with

18   Rule 8(a)(2), Fed.R.Civ.P., on November 16, 2012, the Court ordered Plaintiff to file an

19   Amended Complaint, containing short and plain factual allegations and plausible claims

20   for relief against each defendant. (Doc. 6 at 6)

21        Plaintiff filed a timely Amended Complaint on December 5, 2012, containing 19

22   counts for relief and again alleging claims of conspiracy, violations of Plaintiff's right to

23   due process and equal protection, and violations of the FDCPA. Plaintiff brings this suit

24   against Velocity,[2] Gurstel Chargo, PA ("Gurstel"), and Wells Fargo. (Doc. 8)  The 22-

25   page, 19 count Amended Complaint is not brief or concise and the allegations are not

26

27        [2] While the Amended Complaint's caption only identifies Wells Fargo as a defendant,

28   the body refers to Velocity Investments LLC as a "Defendant." (Doc. 8 at 2)

short and plain. Outside of Count 19, which was dismissed upon screening, Wells Fargo or "Fargo" is mentioned only three times and there is no independent allegation of specific wrongdoing against Wells Fargo.

Plaintiff alleges the Amended Complaint "[a]rises under fraud whereas Velocity and Gurstel with malice and forethought, recklessly and intentionally, presented false, misleading or deceptive documents, Complaint, pleadings, or responses Gurstel knew was (sic) false before the Court(s) misrepresenting, or omitting, material facts, with the expectation the Court(s) would and did rely upon the false documents, Complaint, pleadings, or responses as the Court(s) were entitled." (*Id*. at 3-4)  These allegations throughout the Amended Complaint are exemplary of the "fraud upon the court" Plaintiff describes in his Response to Wells Fargo's Motion to Dismiss.

The Amended Complaint alleges several documents presented in the State action were false or fraudulent. For example, in Count 7, Plaintiff alleges Velocity and Gurstel "[p]resented an Affidavit of Amount Owed [in the State action], wherein the author falsely testified Velocity owned the debt. . . knowing no valid assignment existed . . . ." (*Id*. at 9-10) The Amended Complaint does not allege in what manner the affidavit was false or the basis of Plaintiff's assertion there was no valid assignment. In Count 8, Plaintiff alleges Velocity and Gurstel provided the State court with "a WAMU statement" and "a generic Billing Rights with no signatures at trial[]"[3] which were "documents falsely represent[ing] the existence of a contract[.]" (*Id*. at 10)  He alleges he "lost [the State action] because Velocity provided and Gurstel presented and the [State] Court accepted the false documents at trial falsely representing the material fact as to the existence of a contract." (*Id*. at 11)  Because of the vague reference to a "contract," the Court must speculate Plaintiff is referring to the credit card contract which was the basis of the State action. Again, Plaintiff fails to allege in what manner the documents were

---

[3] The undisputed facts are that there was no trial in the State action and Judgment was entered against Plaintiff because he "failed to appear at the date and time set for the [March 5, 2012 trial]." (Doc. 14-1, Exh. E at 35)

1    false.

2        Plaintiff does not directly request the District Court vacate the judgment in the

3 State action; rather, he seeks relief in the form of "injunctive damages"; compensatory,

4 statutory, and punitive damages; and requests an award of attorney's fees even though he

5 is *pro se*. (*Id.* at 21-22)  For a second time, the Court screened Plaintiff's Amended

6 Complaint per 28 U.S.C. § 1915(e)(2) and dismissed Count 19 which failed to state a

7 claim for a violation of Plaintiff's rights under the Equal Protection Clause under the

8 Federal Constitution as no state action was alleged and none of the defendants are state

9 actors.[4] (Doc. 13 at 8) (citing, *inter alia*, *United Brotherhood of Carpenters & Joiners v.*

10 *Scott*, 463 U.S. 825, 831 (1983))  Noting "[t]he *Rooker-Feldman* doctrine may apply to

11 many, if not all, of Plaintiff's claims[,]" the Court allowed the other counts to go forward

12 at this stage of the litigation, pending briefing by the parties after one or more defendants

13 appeared.[5] (*Id.*)

14        **C. Wells Fargo's Arguments for Dismissal**

15        In its dismissal motion, Wells Fargo argues its "only connection" to this case or

16 Plaintiff is that it had provided apparently an unrelated business loan to a co-defendant

17 who obtained a judgment in the State collection action.[6] (Doc. 14 at 1) "The mere making

18 of a loan does not amount to an agreement to commit any unlawful act." (*Id.*)  Wells

19 Fargo notes the Court dismissed Plaintiff's allegations of a conspiracy to deprive him of

20

21 _____

22        [4] Count 19 alleged Defendants Gurstel, Wells Fargo, and Velocity conspired to
discriminate against Plaintiff in the collection of a debt in violation of the FDCPA in

23 violation of 42 U.S.C. § 1985(3), Plaintiff alleged the motive behind Defendants' joint action
was "a class based invidiously discriminatory animus against Native Americans and or

24 Veterans and or Elderly and or Disabled and or Consumers . . . ."  (Doc. 8 at 20)

25        [5] Defendants Velocity and Gurstel have neither  appeared in this action nor consented

26 to full jurisdiction by a magistrate judge.

27        [6] It is undisputed from the State court complaint that Velocity acquired the debt upon
which the State Court action was based from Chase Bank USA, N.A., not Wells Fargo.

28 (Doc. 14-1, Exh. A, ¶¶ 10-11 at 3)

1    Equal Protection rights in Count 19, which "is the only specific claim that expressly

2    names Wells Fargo." (*Id.* at 3)  Wells Fargo points out that the Amended Complaint

3    makes "general allegations of conspiracy between Wells Fargo and the other defendants,

4    . . . [but] Collins fails to plead sufficient facts to support any such claims." (*Id.* at 4)

5    Wells Fargo argues that, as a matter of law, it cannot be held vicariously liable under the

6    FDCPA because it is not a debt collector. Lastly, Wells Fargo contends "the

7    *Rooker-Feldman* doctrine deprives this Court of jurisdiction over Collins's Due Process

8    claims[]" and bars Plaintiff's challenges to a state court judgment.(*Id.* at 4)

9            **D. Plaintiff's Arguments against Dismissal**

10           Conceding there are no allegations in the Amended Complaint that Wells Fargo is

11   a debt collector under the FDCPA, Plaintiff argues in his response that "[e]very count

12   under FDCPA establish [Plaintiff ] was deprived of rights and privileges to which he is

13   entitled under FDCPA." (Doc. 21 at 2)

14           Regarding his conspiracy claim, Plaintiff contends Wells Fargo loaned money to

15   Velocity so that Velocity could purchase debt under certain "eligibility criteria" which

16   amounted to class-based discrimination. (*Id.*)  According to Plaintiff, his "allegations

17   against Wells Fargo stem from Wells Fargo loaning money to Velocity by way of a

18   contract with Velocity's parent company Velocity Asset Management Inc. for the purpose

19   of buying debt with the agreement that Velocity would use Wells Fargo's '[s]pecific

20   eligibility criteria,' that targeted a class or classes of people, and Wells Fargo knew

21   Velocity would use unlawful means to obtain payment of those debts, thus making Wells

22   Fargo an integral actor in the conspiracy." (*Id.*)  Specifically, Plaintiff alleges, "[W]ells

23   Fargo committed an act in furtherance of the conspiracy by providing the funding for

24   what Wells Fargo knew would culminate in unlawful acts . . . and Velocity and Gurstel

25   committed the concerted acts pursuing the alleged debt as alleged in the Amended

26   Complaint." (*Id.* at 9)

27           Lastly, Plaintiff argues the State court action involved "fraud upon the court." (*Id.*

28   at 6)  He claims "[t]he Oracle Justice Action is not final due to Velocity and Gurstel

1   perpetrating a fraud upon the court with every pleading, document, or response presented

2   to the courts." (*Id*. at 7)  He denies the *Rooker-Feldman* doctrine applies because of the

3   fraud upon the court, and Plaintiff "removed" the Oracle Justice Court action "to this

4   court for adjudication of federal issues and under supplemental jurisdiction for state

5   issues not addressed by the state courts." (*Id*.)

6   **II. Jurisdiction**

7   The Amended Complaint alleges the defendants violated the FDCPA, 15 U.S.C. §

8   1692 *et seq*. Because the FDCPA is a federal statute, Plaintiff's claims arise under federal

9   law. *Mangum v. Action Collection Serv., Inc*., 575 F.3d 935, 938 (9th Cir. 2009); *Aniel v.*

10  *TD Service Co.*, 2011 WL 109550, at *3 (N.D. Cal. Jan. 13, 2011). Accordingly, the

11  District Court of Arizona has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331,

12  and supplemental jurisdiction over Plaintiff's state-law claim pursuant to 28 U.S.C. §

13  1367(a). Plaintiff and Wells Fargo have consented to magistrate-judge jurisdiction

14  pursuant to 28 U.S.C. § 636(c). (Doc. 5, 17)

15  **III. Standard of Review**

16  Federal Rule of Civil Procedure 8(a)(2) requires that each claim in a pleading is

17  supported by "a short and plain statement of the claim showing that the pleader is entitled

18  to relief." Fed.R.Civ.P. 8(a). A motion to dismiss under Rule 12(b)(6) for failure to state a

19  claim upon which relief can be granted "tests the legal sufficiency of a claim."

20  *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro*

21  *v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). Dismissal is proper when a complaint or

22  amended complaint does not make out a cognizable legal theory or does not allege

23  sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hosp. Med.*

24  *Ctr.*, 521 F.3d 1097, 1102 (9th Cir. 2008); *Balistreri v. Pacifica Police Dep't*, 901 F.2d

25  696, 699 (9th Cir. 1990).

26  "To survive a motion to dismiss, a complaint [or amended complaint] must contain

27  sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

28  face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41 (1957)). An

amended complaint states sufficient facts when

> [t]he plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' "

*Id*. at 678 (citations omitted) (quoting *Twombly*, 550 U.S. at 556–57). "As the text of Rule

8(a)(2) itself makes clear, even a 'short and plain' statement can state a claim for relief."

*See Sheppard v. David Evans and Assoc*., 694 F.3d 1045, 1049 (9th Cir. 2012) (reversing

district court's Rule 12(b)(6) dismissal of plaintiff's two-and-one-half page complaint,

stating "while brief, [it] nonetheless satisfies Rule 8(a)(2)'s pleading standard.").

Following the Supreme Court's decision in *Iqbal*, district courts follow a two-step

approach when considering a Rule 12(b)(6) motion to dismiss. *See e.g. Worthen v.

Aftermath, Inc*., 2012 WL 398703, at *1 (D. Nev. Feb. 6, 2012). First, a court must accept

all factual allegations in the complaint as true, discounting legal conclusions clothed as

factual allegations. *Iqbal*,  556 U.S. at 678-79; *Papasan v. Allain*, 478 U.S. 265, 286

(1986); *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) ("Such allegations

are not to be discounted because they are 'unrealistic or nonsensical,' but rather because

they do nothing more than state a legal conclusion - even if that conclusion is cast in the

form of a factual allegation."). Second, the court must determine if these well-pleaded

factual allegations state "a plausible claim for relief." *Iqbal*,  556 U.S. at 679.

Courts do not make plausibility determinations in a vacuum; it is a "context-

specific task that requires the reviewing court to draw on its judicial experience and

common sense." *Id*. A claim is plausible when the factual allegations permit "the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

at 678. "[C]onclusory allegations of law and unwarranted inferences are insufficient to

defeat a motion to dismiss for failure to state a claim." *Caviness v. Horizon Cmty.*

1    *Learning Ctr., Inc*., 590 F.3d 806, 812 (9th Cir. 2010) (citation omitted).

2    **IV. Motions to Dismiss**

3          "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers

4    evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule

5    56 motion for summary judgment, and it must give the nonmoving party an opportunity to

6    respond." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003) (citing Fed.R.Civ.P.

7    12(b)). There are, however, several exceptions to this general rule.

8          **A. Incorporation by Reference**

9          In deciding a motion to dismiss, a district court may consider documents that are

10   integral to the complaint. *Parrino v. FHP, Inc*., 146 F.3d 699, 706 n. 4 (9th Cir. 1988)

11   (noting that where an attached document is integral to the plaintiff's claims and its

12   authenticity is not disputed, the plaintiff "obviously is on notice of the contents of the

13   document and the need for a chance to refute evidence is greatly diminished.") (citation

14   omitted), *superseded by statute on other grounds*, *Abrego v. Dow Chem. Co*., 443 F.3d

15   676 (9th Cir. 2006); *see also Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). When

16   documents contain statements that contradict allegations in an amended complaint, the

17   documents control and a district court need not "[a]ccept as true allegations that

18   contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden*

19   *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *as amended by* 275 F.3d 1187 (9th Cir.

20   2001); *Makua v. Gates*, 2009 WL 3923327, at *3 (D. Haw. Nov. 18, 2009). Where a

21   plaintiff's own allegations are contradicted by other documents and matters asserted,

22   relied upon, or incorporated by reference by plaintiff in the complaint, the district court is

23   not obligated to accept the complaint's allegation as true in deciding a motion to dismiss.

24   *Ritchie*, 342 F.3d at 908; *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002).

25         Under the doctrine of "incorporation by reference," a district court may consider

26   documents that are referenced extensively in an amended complaint and are accepted by

27   all parties as authentic. *Van Buskirk*, 284 F.3d at 980 (9th Cir. 2002); *Lee v. City of Los*

28   *Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  "Even if a document is not attached to a

1   complaint, it may be incorporated by reference into a complaint if the plaintiff refers

2   extensively to the document or the document forms the basis of the plaintiff's claim."

3   *Ritchie*, 342 F.3d at 908. The Ninth Circuit has "[e]xtended the 'incorporation by

4   reference' doctrine to situations in which the plaintiff's claim depends on the contents of

5   a document, the defendant attaches the document to its motion to dismiss, and the parties

6   do not dispute the authenticity of the document, even though the plaintiff does not

7   explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393

8   F.3d 1068, 1076 (9th Cir. 2005)  Thus, under the incorporation-by-reference  doctrine, a

9   district court may look beyond the pleadings without converting a Rule 12(b)(6) motion

10  into one for summary judgment.

11          **B. Judicial Notice**

12          Judicial notice is another exception to the conversion rule. A district court may

13  take judicial notice of material which is either submitted as part of the complaint or

14  necessarily relied upon by the complaint or it may take judicial notice of matters of public

15  record. *Lee*, 250 F.3d at 688-89; *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th

16  Cir. 2010). A district court may take judicial notice of "a fact that is not subject to

17  reasonable dispute because it . . .  can be accurately and readily determined from sources

18  whose accuracy cannot reasonably be questioned . . . at any stage of the proceeding" Rule

19  201(b)(2), (d), Fed.R.Evid. A court "must take judicial notice if a party requests it and the

20  court is supplied with the necessary information." *Snyder v. HSBC Bank, USA, N.A.*, 2012

21  WL 6698088, at *10 (D. Ariz. Dec 26, 2012) (quoting Fed.R.Evid. 201(c)(2)). Taking

22  judicial notice, however, does not convert a motion to dismiss into one for summary

23  judgment. *United States v. 14.02 Acres of Land More or Less in Fresno Cnty*., 547 F.3d

24  943, 955 (9th Cir. 2008); *MGIC Idem. Corp. v. Weisan*, 803 F.2d 500, 504 (9th Cir.

25  1986). A district court may properly take judicial notice of publicly-filed documents.

26  *Williamson v. Tews*, 2012 WL 6965765, at *1 n. 1 (D. Ariz. Nov. 20, 2012) (citing *In re*

27  *Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 2002) (superseded by statute

28  on other grounds) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)); *Passa v.*

1   *City of Columbus*, 123 Fed.Appx. 694, 697 (6th Cir. 2005) ("[A]ll circuits to consider the

2   issue have noted that a court may take judicial notice of at least some documents of public

3   record when ruling on a Rule 12(b)(6) motion.") (citations omitted).

4        Plaintiff attached to his Response to Wells Fargo's Motion to Dismiss 29 exhibits,

5   containing the pleadings and filings in the State action, which establish the relevant and

6   undisputed facts material to Wells Fargo's dismissal motion. He requests the Court to

7   take judicial notice of all 29 exhibits. (Doc. 21 at 3)  The Court will consider the exhibits

8   provided by Plaintiff and Wells Fargo without converting Wells Fargo's 12(b)(6) motion

9   into a Rule 56 motion for summary judgment because copies of the exhibits have been

10  provided to the Court, they are not disputed by the parties, they are integral to Plaintiff's

11  Amended Complaint, and are clearly subject to judicial notice.

12  **V. Governing Law**

13       **A. Conspiracy**

14       Under Arizona law, there is no such thing as a civil action for "conspiracy." *Barba*

15  *v. Seung Heun Lee*, 2009 WL 8747368, at *8 (D. Ariz. Nov. 4, 2009) (citing *Tovrea Land*

16  *& Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 131, 412 P.2d 47, 63 (Ariz. 1966)). "The

17  action is one for damages arising out of acts committed pursuant to the conspiracy." *Id.*;

18  *Estate of Hernandez v. Flavio*, 187 Ariz. 506, 510, 930 P.2d 1309, 1313 (1997). "In

19  Arizona, '[t]o establish liability on the basis of conspiracy, a plaintiff must show by clear

20  and convincing evidence that the defendant and at least one other person agreed to

21  accomplish an unlawful purpose or lawful purpose by unlawful means, and accomplish

22  the underlying tort, which in turn caused damages.'" *Id.* (quoting *Dawson v. Withycombe*,

23  216 Ariz. 84, 103, 163 P.3d 1034, 1053 (Az. Ct. App. 2007)). "Assistance to the tort-

24  feasor by itself . . . , which courts often use to infer a conspiratorial agreement, may be

25  insufficient to prove an actual agreement to participate in the conspiracy. This is because

26  there is a qualitative difference between showing an agreement to participate in a tort

27  (conspiracy) and a knowing action which might substantially aid the tortfeasor to commit

28  a tort." *Dawson*, 216 Ariz. at 103, 163 P.3d at 1053 (quoting *Wells Fargo Bank v. Ariz.*

1   *Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz.

2   474, 499, 38 P.3d 12, 37 (Ariz. 2002)).

3          In pleading conspiracy liability, a plaintiff must, at minimum, allege some facts

4   showing the elements of a conspiracy, including the requisite agreement between

5   defendants. *Hillis v. Heineman*, 2009 WL 2222709, at *4 (D. Ariz. July 23, 2009).

6   Furthermore, "Rule 9(b) imposes heightened pleading requirements where the object of

7   the conspiracy is fraudulent." *Barba*, 2009 WL 8747368, at *8 (citing *Swartz v. KPMG*

8   *LLP*, 476 F.3d 756, 765 (9th Cir. 2007) (*per curiam*) (internal quotation omitted).

9          **B.  The Fair Debt Collection Practices Act**

10          It is well settled that FDCPA liability is limited to individuals or entities who meet

11   the FDCPA's definition of "debt collector." *See*, *e.g.*, *Pollice v. Nat'l Tax Funding LP*,

12   225 F.3d 379, 403 (3d Cir. 2000) ("The FDCPA's provisions generally apply only to

13   'debt collectors.' . . . Creditors - as opposed to 'debt collectors' - generally are not subject

14   to the FDCPA."); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir.

15   1996) (finding that the liability for a debt collector should not be vicariously imposed on

16   the assignee who was not a debt collector under the FDCPA); *Miranda v. Field Asset*

17   *Services*, 2013 WL 124047, at *4 (S.D. Cal. Jan. 9, 2013); *Plumb v. Barclays Bank*

18   *Delaware*, 2012 WL 2046506, at *4 (E.D. Wash. June 5, 2012) ("[E]ven vicarious

19   liability under the FDCPA has been restricted to principals who themselves are statutory

20   'debt collectors.'"); *Oei v. N. Star Capital Acquisitions, LLC*, 486 F. Supp. 2d 1089, 1097

21   (C.D. Cal. 2006). The FDCPA defines "debt collector" as "any person who . . . in any

22   business the principal purpose of which is the collection of any debts, or who regularly

23   collects or attempts to collect, directly or indirectly, *debts owed or due or asserted to be*

24   *owed or due another*. . . ." 15 U.S.C. § 1692a(6) (emphasis added). The FDCPA was

25   designed to protect consumers who have been victimized by unscrupulous debt collectors,

26   regardless of whether a valid debt actually exists. *Baker v. G.C. Servs. Corp.*, 677 F.2d

27   775, 777 (9th Cir. 1982).

28          Generally speaking, crediting institutions, such as banks, are not debt collectors

1    under [the FDCPA] because they collect their own debts and are in the business of

2    lending money to consumers. *Davis v. Dillard Nat'l Bank*, 2003 WL 21297331, at * 4

3    (M.D.N.C. June 4, 2003). A bank that is "a creditor is not a debt collector for the

4    purposes of the FDCPA and creditors are not subject to the FDCPA when collecting their

5    accounts." *Montgomery v. Huntington Bank*, 346 F.3d 693, 697-99 (6th Cir. 2003)

6    (collecting cases discussing banks' liability exemption under FDCPA).

7            The Ninth Circuit has recognized there may be vicarious liability under the

8    FDCPA. *See Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1516 (9th Cir. 1994).

9    "Under general principles of agency - which form the basis of vicarious liability under the

10   FDCPA, - to be liable for the actions of another, the principal must exercise control over

11   the conduct or activities of the agent." *Clark v. Capital Credit & Collection Servs., Inc.*,

12   460 F.3d 1162, 1173 (9th Cir. 2006) (citing *Newman v. Checkrite California*, 912

13   F.Supp. 1354, 1370 (E.D. Cal. 1995); Restatement (Second) of Agency § 1 (1958))

14   (internal quotation marks omitted). In *Clark*, summary judgment was affirmed because

15   the plaintiffs offered no evidence upon which a reasonable trier of fact could conclude

16   that Hasson, the collection agency's attorney, exercised control over Capital, the

17   collection agency, or Brumley, the Capital employee responsible for collection activities

18   on the Clark account.

19           **C. The *Rooker-Feldman* Doctrine**

20           The *Rooker-Feldman* doctrine is a well-established jurisdictional rule prohibiting

21   federal courts from exercising appellate review over final state court judgments. *See*

22   *Henrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir. 2007). The *Rooker-Feldman*

23   doctrine[7] prohibits federal courts from exercising subject matter jurisdiction over suits

24   "[b]rought by state-court losers complaining of injuries caused by state-court judgments

25   rendered before the district court proceedings commenced and inviting district court

26   review and rejection of those judgments." *Lance v. Dennis*, 546 U.S. 459, 464 (2006)

27   ─────────────────────

28           [7] The doctrine takes its name from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)
     and *D.C. Ct. App. v. Feldman*, 460 U.S. 462 (1983).

1   (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)), *aff'd*

2   *in part, vac'd in part on different grounds by Lance v. Coffman*, 549 U.S. 437 (2007).

3   "The basic premise of *Rooker-Feldman* is that 'a federal district court does not have

4   subject matter jurisdiction to hear a direct appeal from the final judgment of a state

5   court.'" *Maldonado v. Harris*, 370 F.3d 945, 949 (9th Cir. 2004) (quoting *Noel v. Hall*,

6   341 F.3d 1148, 1154 (9th Cir. 2003)). "*Rooker-Feldman* recognizes the implicit statutory

7   structure established by Congress, which has determined that the United States Supreme

8   Court is the only federal court with jurisdiction to hear appeals from state courts." *Id*.

9          "If a federal plaintiff has brought a de facto appeal from a state court decision -

10   alleging legal error by the state court and seeking relief from the state court's judgment -

11   he or she is barred by *Rooker-Feldman*." *Kougasian v. TMSL, Inc*., 359 F.3d 1136, 1142

12   (9th  Cir. 2004) (citation omitted). "The federal plaintiff is also barred from litigating, in a

13   suit that contains a forbidden de facto appeal, any issues that are 'inextricably

14   intertwined' with issues in that de facto appeal." *Id*. (citing *Noel*, 341 F.3d at 1155)

15   (internal quotation marks omitted); *see also Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir.

16   2012). "The inextricably intertwined test thus allows courts to dismiss claims closely

17   related to claims that are themselves barred under *Rooker-Feldman*." *Id*.  An affirmative

18   independent legal wrong, however, asserted against a party involved in the state court

19   action in a subsequent federal action is not barred under *Rooker–Feldman*. *Noel*, 341 F.3d

20   at 1164; *see also Johnson v. DeGrandy*, 512 U.S. 997, 1005–06 (1994) (*Rooker–Feldman*

21   doctrine applies only when the federal plaintiff was a party to the state case and is

22   challenging an adverse decision by the state court).

23          "In assessing whether the *Rooker-Feldman* doctrine applies, 'the fundamental and

24   appropriate question to ask is whether the injury alleged by the federal plaintiff resulted

25   from the state court judgment itself or is distinct from that judgment.'" *Normandeau v.*

26   *City of Phoenix*, 516 F.Supp.2d 1054, 1063 (D. Ariz. 2005) (quoting *Garry v. Geils*, 82

27   F.3d 1362, 1365 (7th Cir. 1996)). "If the injury alleged resulted from the state court

28   judgment itself, the *Rooker-Feldman* doctrine dictates that the federal courts lack subject

1    matter jurisdiction, even if the state court judgment was erroneous or unconstitutional."

2    *Id*. (quoting *Centres, Inc. v. Town of Brookfield*, 148 F.3d 699, 702 (7th Cir. 1998)). "By

3    contrast, if the alleged injury is distinct from the state court judgment and not inextricably

4    intertwined with it, the *Rooker-Feldman* doctrine does not apply[.]" (*Id*.)  Courts have

5    held that a federal "suit seeking damages for the execution of a judicial order is just a way

6    to contest the order itself, [therefore] the *Rooker-Feldman* doctrine is in play." *See, e.g.*,

7    *Busch v. Torres*, 905 F.Supp. 766, 770 (C.D. Cal. 1995) (quoting *Homola v. McNamara*,

8    59 F.3d 647, 651 (7th Cir. 1995)); *Pinzon v. Jensen*, 2009 WL 4134809, *5 (E.D. Cal.

9    Nov 23, 2009) ("[P]laintiff appears to be asserting that the small claims judgment caused

10   Plaintiff injury. These are the kinds of claims the court lacks jurisdiction to hear under the

11   *Rooker–Feldman* doctrine."). "Determining what constitutes a forbidden de facto appeal,

12   however, has sometimes proven difficult for the lower courts." *Kougasian*, 359 F.3d at

13   1142 (citing *Noel*, 341 F.3d at 1161-62 (collecting cases)).

14        The *Rooker-Feldman* doctrine, however, does not apply to federal suits alleging

15   fraud in relation to state court proceedings. "A plaintiff alleging extrinsic fraud on a state

16   court is not alleging a legal error by the state court; rather, he or she is alleging a

17   wrongful act by the adverse party." *Kougasian*, 359 F.3d at 1140-41 (citing *Noel*, 341

18   F.3d at 1164)f ("If, on the other hand, a federal plaintiff asserts as a legal wrong an

19   allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar

20   jurisdiction."). "Extrinsic fraud on a court is, by definition, not an error by that court. It is,

21   rather, a wrongful act committed by the party or parties who engaged in the fraud." *Id*. at

22   1141; *see also Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855 (9th Cir. 2008).

23   "*Rooker-Feldman* therefore does not bar subject matter jurisdiction when a federal

24   plaintiff alleges a cause of action for extrinsic fraud on a state court and seeks to set aside

25   a state court judgment obtained by that fraud." *Id*. "In order to be considered extrinsic

26   fraud, the alleged fraud must be such that it prevents a party from having an opportunity

27   to present his claim or defense in court . . . or deprives a party of his right to a day in

28   court." *Green v. Ancora-Citronelle Corp.*, 577 F.2d 1380, 1384 (9th Cir. 1978). A

1    "judgment may be set aside only where the fraud is extrinsic or collateral to the matters

2    involved in the action." *Id*. As the Ninth Circuit has explained, alleged extrinsic fraud that

3    goes to the "very heart of the issues contested in the state court action" is not extrinsic or

4    collateral to the action. *Id*.; *see also Sanders v. Del Fierro*, 2012 WL 2390754, at *4 (S.D.

5    Cal. June 22, 2012).

6    **VI. Discussion**

7         The Amended Complaint fails to allege sufficient facts upon which to base a

8    plausible claim for extrinsic fraud to preclude the application of the *Rooker-Feldman*

9    doctrine. It offers no specific facts or particularized details in support of Plaintiff's

10    allegation that Wells Fargo "presented false, misleading or deceptive documents" in the

11    State court action. No explanation is provided in the Amended Complaint how, in what

12    manner, or why the State action's pleadings and other documents were "false, misleading

13    or deceptive." The Amended Complaint does not meet Rule 9(b)'s heightened pleading

14    requirements where the object of the conspiracy was fraudulent. *Barba*, 2009 WL

15    8747368, at *8; *Swartz v. KPMG LLP*, 476 F.3d at 765; *Davis v. Chase Bank U.S.A.,*

16    *N.A.*, 650 F.Supp.2d 1073, 1089-90 (C.D. Cal. 2009). Because Plaintiff fails to state a

17    plausible claim for extrinsic fraud on his claims against Wells Fargo, his federal claims

18    are barred by the *Rooker-Feldman* doctrine, and this District Court is without jurisdiction

19    to consider his lawsuit against Wells Fargo.

20         Even if this District Court had subject-matter jurisdiction over Plaintiff's action

21    against Wells Fargo, Plaintiff's Amended Complaint fails to state a plausible conspiracy-

22    based claim of liability or violation of the FDCPA. To avoid a dismissal for failure to

23    state a claim against Wells Fargo, Plaintiff's Amended Complaint need not contain

24    detailed factual allegations; rather, it must plead "enough facts to state a claim to relief

25    that is plausible on its face." *Twombly*, 550 U.S. at 570. The Amended Complaint alleges

26    vague conclusions that "Defendants came to an agreement, explicit or otherwise, to

27    commit concerted overt acts tacit or otherwise, that were unlawful or unconstitutional[.]"

28    (Doc. 8 at 2)

1    Plaintiff has not alleged facts that demonstrate a plausible agency claim against

2   Wells Fargo, as a principal, that exercised control over the conduct or activities of one of

3   the other defendants, as Wells Fargo's purported agent, for purposes of vicarious liability.

4   In fact, the undisputed facts from the State action's court documents show Wells Fargo

5   had no role in the State action, was not a party, and had no prior involvement with

6   Velocity or Gurstel *vis a vis* Plaintiff.  Plaintiff has not pointed to any allegation in the

7   Amended Complaint, demonstrating Wells Fargo exercised control over either Velocity

8   or Gurstel.  The evidence shows Velocity acquired the debt upon which the State Court

9   action was based from either Chase Bank USA, N.A. or Washington Mutual, not Wells

10   Fargo. The Amended Complaint provides only conclusory statements, which are

11   insufficient to state a plausible claim under Rule 8(a), Fed.R.Civ.P.; *Hillis*, 2009 WL

12   2222709, at *4 (dismissing civil conspiracy claim because it alleged no facts showing

13   agreement between defendants). Assuming the underlying tort was the commission of a

14   fraudulent or tortious act, Plaintiff fails to allege specific facts regarding the role Wells

15   Fargo played in the act; thus, the Amended Complaint does not meet the requirements of

16   Rule 9(b) in pleading a conspiracy to commit fraudulent acts or Rule 8(a). *See Swartz*,

17   476 F.3d at 765; *S. Union Co. v. Sw. Gas Corp*., 165 F.Supp.2d 1010, 1019-22 (D. Ariz.

18   2001). The mere existence of a borrower-creditor relationship between Wells Fargo and

19   Velocity on a loan unrelated to Plaintiff does not state a plausible claim for either

20   conspiracy or vicarious liability. *See Wells Fargo Bank*, 201 Ariz. at 498-99, 38 P.3d at

21   36-37 (lending agreement not clear and convincing evidence of conspiracy); *Stern v.

22   Charles Schwab & Co*., 2009 WL 3352408, at *7-8 (D. Ariz. Oct. 15, 2009) (vicarious

23   liability on the part of a bank does not arise from "typical banking transactions,"

24   including the extension of credit).

25    Lastly, assuming *arguendo* a bank may be liable under the FDCPA, Plaintiff has

26   conceded there are no allegations in the Amended Complaint that Wells Fargo is a debt

27   collector within the meaning of the FDCPA. (Doc. 21 at 2)  Additionally, because the

28   Amended Complaint has not alleged sufficient facts to support a plausible agency

1   relationship between Wells Fargo and either Velocity or Gurstel,  Wells Fargo has no

2   vicarious liability under the FDCPA. *See Clark*, 460 F.3d at 1173 (to be liable under the

3   FDCPA for the actions of another, the principal must exercise control over the conduct or

4   activities of the agent.) (internal quotation marks omitted). Therefore, no plausible

5   FDCPA claim has been alleged against Wells Fargo.

6   **VII. Conclusion**

7          *Pro se* Plaintiff was forewarned that even though his pleadings are held to a less

8   stringent standard than those prepared by attorneys, *Rand v. Rowland*, 154 F.3d 952, 957

9   (9th Cir. 1998) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)), *pro se* litigants

10  must "abide by the rules of the court in which he litigates." *Carter v. Commissioner of*

11  *Internal Revenue*, 784 F.2d 1006, 1008 (9th Cir. 1986). (*See* doc. 6 at 2)  *Pro se* litigants

12  "must meet certain minimal standards of pleading." *Ticktin v. C.I.A.,* 2009 WL 976517,

13  at *4 (D. Ariz. April 9, 2009) (citation omitted). "A *pro se* complaint that . . . fails to

14  plainly and concisely state the claims asserted . . . falls short of the liberal and minimal

15  standards set out in Rule 8(a)." *Id.* (citation and internal quotation marks omitted); *see*

16  *also Vega v. JPMorgan Chase Bank, N.A.*, 654 F.Supp.2d 1104, 1111 (E.D. Cal. 2009)

17  (holding that the Rule 8 requirement "applies to good claims as well as bad, and is the

18  basis for dismissal independent of Rule 12(b)(6)") (citation omitted).

19         Because the minimal facts alleged in an Amended Complaint against Wells Fargo

20  "do not permit the court to infer more than the mere possibility of misconduct, the

21  [Amended] [C]omplaint has alleged - but it has not shown - that [Plaintiff] is entitled to

22  relief." *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)) (brackets and internal

23  quotation marks omitted). The Court finds the Amended Complaint fails to adequately

24  plead a plausible claim against Wells Fargo.

25         Based on the foregoing,

26         **IT IS ORDERED** that Defendant Wells Fargo's Motion to Dismiss, doc. 14, is

27  **GRANTED**. Defendant Wells Fargo is dismissed with prejudice from this action. The

28  Clerk is kindly directed to enter judgment in favor of Defendant Wells Fargo against

1   Plaintiff without Rule 54(b) language. *See AGA Shareholders, LLC v. CSK Auto, Inc.*,

2   2009 WL 297704 (D. Ariz. Feb. 6, 2009).

3        Dated this 15th day of March, 2013.

4

5

6                                                    Lawrence O. Anderson
                                            United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28