**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Collins, | ) No. CV-12-2284-PHX-LOA |
|       Plaintiff, | ) **ORDER** |
| vs. | ) |
| Wells Fargo Bank, et al., | ) |
|       Defendants. | ) |

      This action is before the Court on Defendants Velocity Investments, LLC ("Velocity") and Gurstel Chargo, P.A.'s ("Gurstel" or "law firm") Motion to Dismiss Amended Complaint, initially filed on April 3, 2013 and again on May 6, 2013 to comply with the Local Rules. (Docs. 29, 42, 44)  Previously, the Court dismissed Wells Fargo Bank from this action on March 15, 2013, finding the Amended Complaint failed to state a plausible claim against Wells Fargo Bank. (Doc. 25)  Judgment was entered in favor of Wells Fargo Bank without Rule 54(b) language. (Doc. 26) The Court has screened *pro se* Plaintiff's Complaint and Amended Complaint as mandated by 28 U.S.C. § 1915(e)(2). (Docs. 6, 13)  On the second screening, Count 19 of the Amended Complaint was dismissed for failure to state a plausible equal protection claim. (Doc. 13 at 7-8)  At that early stage of this litigation and out of an abundance of caution, the Court permitted Plaintiff's other eighteen counts to go forward for development of the record upon Velocity's and Gurstel's appearances, and further briefing by the parties.

      Plaintiff and Defendants have expressly consented to magistrate-judge jurisdiction

1   pursuant to 28 U.S.C. § 636(c). (Docs. 5, 33)

2   After considering the briefing and relevant authorities, the Court finds it unnecessary

3   to address all of the issues raised in Defendants' motion as the claims alleged in the

4   Amended Complaint are barred by the doctrine of issue preclusion (collateral estoppel) or

5   fail to state a plausible claim upon which relief may be granted. Defendants' Motion to

6   Dismiss Amended Complaint will be granted and this action dismissed with prejudice.

7   **I. Background**

8   **A. The State Action**

9   This lawsuit arises out of a debt collection action against Plaintiff in the Arizona

10   courts, resulting in a final judgment against him. According to the undisputed, publicly-filed

11   State-court documents, Velocity, through its Scottsdale law firm, Gurstel, filed suit against

12   Plaintiff on May 9, 2011, in the Oracle Justice Court, Case No. J11005CV20110088 ("the

13   State action"), seeking to collect a $7,240.08 credit card debt. (Docs. 14-1, Exhibit ("Exh.")

14   A at 2-5; 22, ¶ 3 at 1)  Velocity acquired Plaintiff's unpaid revolving credit card account

15   from Chase Bank USA, N.A.  (*Id.*; Exh. A, ¶¶ 3, 10)  The law firm's State complaint alleged

16   causes of action for breach of contract based upon Plaintiff's unpaid credit card debt. (*Id.*,

17   ¶¶ 9, 15)  Velocity was the only plaintiff; Plaintiff and "J Doe Spouse" were the only

18   defendants. (*Id.*)

19   In the State action, *pro se* Plaintiff filed his Third Amended Answer and Counterclaim

20   in October 2011, asserting 12 counts, each separately-numbered and called a "counterclaim,"

21   against Velocity, its owners or directors, the law firm, and several individual attorneys

22   employed by the firm who likely had no involvement in the State action, and alleging

23   multiple violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692

24   *et seq.*, and claims under 42 U.S.C. § 1985. (Docs. 14-1, Exh. C at 9-30; 22, ¶ 16 at 2)  In his

25   State Answer, Plaintiff entered general denials; admitted he "had a Washington Mutual

26   (WAMU) open account credit card during the period in question[;]" and wrote that because

27   WAMU raised the interest rate on this credit card, Plaintiff would "make no more payments

28   until the interest rate is returned to 10% with no late fees or over limit fees due." (*Id.*, at 9-11)

1   Count 1 of Plaintiff's State Counterclaim, labeled "1st Counterclaim," alleged the following

2   claim which is representative of the other counts against the State counterdefendants:

3

4       About April 2011 plaintiff's lawyers, . . . attempted to win suit against defendant in
        Pima Consolidated Justice Court by presenting suit without serving defendant with
5       Summons or Complaint. The suit was dismissed without prejudice. (case #
        cv11004349).
6       The documentation sent to defendant from plaintiff's lawyers for dismissal from Pima
        Consolidated Justice Court does not contain any court order signed by any judge. A
7       copy of a court dismissal does not constitute first contact under FDCPA and violates
        l5 US[C] 1692g(a)(d).
8       By presenting suit in court without serving defendant Summons and Complaint
        constitutes unfair and unconscionable means for depriving defendant an opportunity
9       to defend under 15 US[C] 1692f.
        15 US 1692k(2)(A) allows for statutory damages for any violation of FDCPA in the
10      amount up to one thousand ($1000.00) dollars for each violation.

11  (Doc. 14-1, Exh. C at 13-14)  Despite the allegation he was not served, there is no evidence

12  in the State record that Plaintiff moved to dismiss the State action by challenging the

13  sufficiency of service of process pursuant to Arizona Rules of Civil Procedure 12(b)(5). Of

14  course, an Arizona "[j]udgment would be void and subject to attack if the court that rendered

15  it was without jurisdiction because of lack of proper service." *Walker v. Madorsky*, 2013 WL

16  950622, at *6 (Az.Ct.App. March 12, 2013) (quoting *Koven v. Saberdyne Sys., Inc*., 128

17  Ariz. 318, 321, 625 P.2d 907, 910 (Az.Ct.App. 1980) (internal quotation marks omitted).

18      Because Plaintiff's State counterclaim sought more than $10,000 in relief, the Oracle

19  Justice of the Peace granted Plaintiff's, there the defendant, third request to amend his answer

20  to allege a counterclaim and then transferred the case to the Pinal County Superior Court in

21  Florence, Arizona on October 18, 2011. (*Id*., Exh. B at 7)  Nearly two months later, on

22  December 22, 2011, the Superior Court Judge dismissed Plaintiff's counterclaim on State-

23  law grounds, and remanded Velocity's collection action back to the Oracle Justice Court for

24  further proceedings. (*Id*., Exh. D at 32-33[1])  Plaintiff failed to appear for the March 5, 2012

25  _____

26      [1] The Superior Court's December 21, 2011 minute entry order states the legal basis
    for the dismissal of Plaintiff's State Counterclaim:
27

28      [D]efendant's Counterclaims seek punitive damages. However, Defendant alleges no

trial. (*Id.*, Exh. E at 35-36)  Because Plaintiff failed to appear for trial, judgment was entered against him, and in favor of Velocity, on March 5, 2012, in the sum of $7,240.08, plus pre-judgment interest, Velocity's attorney's fees, "[f]or a total judgment in the amount of $11,445.08[,] plus post judgment interest to bear interest at the rate of 4.25% per annum, until paid." (*Id.*)  No evidence has been presented in this federal action that Plaintiff appealed the State judgment, which is now final despite Plaintiff's contrary claim, unsupported by any authority, that "[t]he Oracle action is not final due to fraud on the court." (Doc. 46, lines 25-26 at 9)

**B. The Federal Action**

On October 25, 2012, *pro se* Plaintiff filed this federal action, alleging 22 counts of conspiracy; violations of the FDCPA, Plaintiff's right to due process and equal protection; and abuse of judicial power by two State judges. (Doc. 1)  Plaintiff also requested to proceed *in forma pauperis*. (Doc. 2)  After screening the Complaint and finding the Complaint did not comply with the Federal Rules of Civil Procedures 8(a)(2) and 12(b)(6), on November 16, 2012, the Court ordered Plaintiff to amend his Complaint, with short and plain factual allegations raising plausible claims for relief against each defendant. (Doc. 6)

Plaintiff filed an Amended Complaint on December 5, 2012, alleging 19 causes of action for various violations of the FDCPA, and Plaintiff's right to procedural due process of law.  The 22-page, 19-count Amended Complaint, however, is neither brief nor concise. (Doc. 8) The allegations are not short and plain; but rather, are rambling, duplicative, mostly conclusory, and partly unintelligible. (*Id.*) The gist of the Amended Complaint's allegations

---

facts providing a basis for punitive damages under Arizona Law. Moreover, as Plaintiff points out, Defendant's remaining counterclaims are compulsory, pursuant to Rule 13(a), Arizona Rules of Civil Procedure, and should have been raised when Defendant filed his original answer. Therefore, IT IS ORDERED dismissing Defendant's Counterclaims.

(Doc. 14-1, Exh. D at 32-33)

is that it "[a]rises under fraud whereas Velocity and Gurstel with malice and forethought, recklessly and intentionally, presented false, misleading or deceptive documents, Complaint, pleadings, or responses Gurstel knew was [sic] false before the Court(s) misrepresenting, or omitting, material facts, with the expectation the Court(s) would and did rely upon the false documents, Complaint, pleadings, or responses as the Court(s) were entitled." (*Id*. at 3-4) The counts, some of which are repetitive, are fairly grouped and summarized as follows:

1. Count 1 alleges Velocity provides "incentives" to its outsourced law firms, like Gurstel, for "aggressively pursuing suits" attempting to collect the debt. Gurstel presented a Complaint that failed to provide a complete, accurate, itemized, statement of money sought attempting to collect debt, in violation of the FDCPA, which requires Gurstel to act in accordance with the law when attempting to collect debt;

2. Counts 2 and 3 allege it is Velocity's company policy so Gurstel deprived Plaintiff of his right under the law to a first contact letter when attempting to collect a debt prior to court action, in violation of the FDCPA, which requires Gurstel to act in accordance with the law when attempting to collect the debt;

3. Count 4 alleges because Gurstel failed to provide Plaintiff with 30 days advance notice for validation of the debt prior to court action, Gurstel deprived Plaintiff of his right to be informed of his right under the law when attempting to collect a debt prior to court action, in violation of the FDCPA, which requires Gurstel to act in accordance with the law when attempting to collect debt;

4. Counts 5, 10, and 12 allege Gurstel deprived Plaintiff of his right under the law to be free of actions that could not legally be taken, in violation of the FDCPA, which requires Gurstel to act in accordance with the law when attempting to collect the debt. Count 10 alleges Velocity did not own the debt;

5. Counts 6, 9, 11, 15, and 16 allege Gurstel used unfair or unconscionable means when attempting to collect the debt, in violation of the FDCPA, which requires Gurstel to act in accordance with the law when attempting to collect the debt. Count 9 alleges Velocity did not own the debt;

6. Counts 7 and 8 allege Velocity provided and Gurstel presented false documents in the State case and, thus, deprived Plaintiff of his right under law to be free of false, misleading, or deceptive documents when attempting to collect the debt (free from fraud), in violation of the FDCPA, which requires Gurstel to act in accordance with law attempting to collect the debt;

7. Count 13 alleges Gurstel intentionally harassed Plaintiff in attempting to collect the debt by sending State court documents to his brother's address 50 miles away causing Plaintiff unnecessary time and expense to retrieve the documents, in violation of the FDCPA, which requires Gurstel to act in accordance with law attempting to collect the debt;

8. Count 14 alleges because it is Velocity's and Gurstel's policy to do so, they deprived Plaintiff of his right to Due Process without first informing Plaintiff of his rights under law before proceeding to court action, apparently in violation of the 5th

Amendment and, perhaps, the FDCPA;

9. Counts 17 and 18 allege Gurstel deprived Plaintiff of his constitutional right to a full and fair opportunity to have his counterclaims heard and denied him his right to present his affirmative defenses, apparently in violation of the 5th Amendment.

(Doc. 8)  Excluding Count 19 which was dismissed on screening, many counts do not mention Velocity, much less state a plausible claim against it, *i.e.*, Counts 4-6, 11-13, 15, 17-18, and Count 16 simply alleges Gurstel falsely alleged that Plaintiff alleged Velocity exceeded its charter authority by extending credit to Plaintiff. (*Id*.)

The Amended Complaint claims several documents Defendants presented in the State action were false or fraudulent. For example, in Count 7, Plaintiff alleges "Velocity provided and Gurstel presented an Affidavit of Amount Owed [in the State action], wherein the author falsely testified Velocity owned the debt. . . knowing no valid assignment existed . . . ." (*Id*. at 9-10) The Amended Complaint does not allege in what manner the affidavit was false or the basis of Plaintiff's assertion there was no valid assignment. In Count 8, Plaintiff alleges Velocity and Gurstel provided the State court with "a WAMU statement" and "a generic Billing Rights with no signatures at trial[]"[2] which were "documents falsely represent[ing] the existence of a contract[.]" (*Id*. at 10)  Plaintiff claims he lost [the State action] because Velocity provided, Gurstel presented, and the [State] Court accepted the false documents at trial "falsely representing the material fact as to the existence of a contract." (*Id*. at 11) Because of the vague reference to a "contract," the Court assumes Plaintiff is referring to the credit card contract which was the basis of the State action. Again, as with many of his claims, Plaintiff fails to allege in what manner the documents were false except the general denial a contract existed.

Plaintiff does not directly request that the District Court vacate the State-court judgment; rather, he seeks relief in the form of "injunctive damages paid to the Court from each Defendant" which sounds like a damages request, rather than injunctive relief;

---

[2] The undisputed facts are that there was no trial in the State action and Judgment was entered against Plaintiff because he "failed to appear at the date and time set for the [March 5, 2012 trial]." (Doc. 14-1, Exh. E at 35)

1    compensatory, statutory, and punitive damages; and an award of attorney's fees even though

2    he is representing himself. (*Id.* at 21-22)

3              **C. Defendants' Arguments for Dismissal**

4              Defendants Velocity and Gurstel move the Court to dismiss this action with prejudice

5    on the merits without leave to amend. (Doc. 42)   Citing Rules 4, 8, 12(b)(1), 12(b)(2),

6    12(b)(5), and 12(b)(6), Fed.R.Civ.P., Defendants contend the Amended Complaint's causes

7    of action are barred by the FDCPA's one-year statute of limitations, the *Rooker-Feldman*

8    doctrine, the doctrines of *res judicata* (claim preclusion) and collateral estopple (issue

9    preclusion); fail to state plausible claims upon which relief can be granted; the fraud claim

10   was not pled with sufficient particularity; and the Amended Complaint and summons were

11   not served timely on Defendants within 120 days after his Complaint was filed.

12             **D. Plaintiff's Arguments against Dismissal**

13             *Pro se* Plaintiff's Response opposing the motion describes his suit as one "for

14   deprivation of constitutional and civil rights, fraud, and violations, and FDCPA et seq." (Doc.

15   46 at 1) Most of his Response repeats the conclusions alleged in his Amended Complaint.

16   He alleges that "[e]very document and pleading presented by Gurstel and Velocity in case

17   number cv 20110088/cv 201104350[3] was false, misleading, or deceptive account of the event

18   or argument." (*Id.* at 2)  "Due Process, Equal Protection, 42 USC 1985(3), and Justice cannot

19   happen in a proceeding where officers of the court perpetrate a fraud upon the court thereby

20   depriving the defendant a full and fair opportunity to defend and to have his counterclaims

21   heard."

22             In separate subsections, Plaintiff's Response addresses each ground Defendants raise

23   to dismiss this federal action. Citing federal authorities addressing *Twombly* and *Iqbal*, he

24   claims he "believes he presented sufficient argument to overcome a motion to dismiss and

25   upon considering exhibits presented by [Plaintiff] in support of the Amended Complaint he

26

27             [3] When the State action was transferred to the Pinal County Superior Court, the action

28   was given a different case number.

1    believes his must survive." (Doc. 46 at 12-13)  Unfortunately for him, he has not.

2           Responding to Defendants' arguments that Plaintiff's FDCPA claims are barred by

3    the doctrine of claim preclusion, Plaintiff relies upon *Circle K Corporation v. Industrial*

4    *Commission*, 179 Ariz. 422, 425, 880 P.2d 642, 645 (Az.Ct.App.1993) and the proposition

5    of law that

6           "[i]ssue preclusion" occurs when the issue to be litigated was actually litigated in a
           prior proceeding. In the prior litigation a final judgment was entered, the party against
7           whom the doctrine is to be invoked had a full opportunity to litigate the issue, the
           party actually did litigate the issue, and the issue was essential to a final judgment.
8           *Chaney Bldg. Co. v. City of Tucson*, 148 Ariz. 571, 573, 716 P.2d 28, 30 (1986). In
           a second proceeding a party should not be able to relitigate the issue that has already
9           been decided. However, in the case of a judgment entered by default, issue preclusion
           is not applied, because none of the issues is litigated. *Id*. Issue preclusion requires
10          actual litigation. Claim preclusion does not. (footnote omitted)

11   179 Ariz. at 425, 880 P.2d at 645. Plaintiff argues that "[b]y denying [Plaintiff's] affirmative

12   and non-compulsory counterclaims by misrepresentations, and or omissions, of material facts

13   by Gurstel and Velocity  [Plaintiff] did not receive a full and fair opportunity to litigate his

14   case."  (Doc. 46 at 15)  Again, the Court disagrees.

15   **II. Standard of Review**

16          Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a cause

17   of action for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).

18   In ruling on a Rule  12(b)(6) motion, a district court must "accept all material allegations of

19   fact as true and construe the complaint in a light most favorable to the non-moving party."

20   *Vasquez v. L.A. Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). A complaint, however, must also

21   "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"

22   *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550

23   U.S. 554, 570 (2007)). A complaint or amended complaint will survive a motion to dismiss

24   where the plaintiff "pleads factual content that allows the court to draw the reasonable

25   inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550

26   U.S. at 556).

27          Federal Rule of Civil Procedure 8(a)(2) requires that each claim in a pleading must

28   be supported by "[a] short and plain statement of the claim showing that the pleader is

1  entitled to relief." Fed.R.Civ.P. 8(a). A motion to dismiss under Rule 12(b)(6) for failure to
2  state a claim upon which relief can be granted "tests the legal sufficiency of a claim."
3  *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro*
4  *v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). Dismissal is proper when a complaint or
5  amended complaint does not make out a cognizable legal theory or does not allege sufficient
6  facts to support a cognizable legal theory. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d
7  1097, 1102 (9th Cir. 2008); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.
8  1990).

9       Following the Supreme Court's decision in *Iqbal*, district courts followed a two-step
10  approach when considering a Rule 12(b)(6) motion to dismiss. *See, e.g. Worthen v.*
11  *Aftermath, Inc.*, 2012 WL 398703, at *1 (D. Nev. Feb. 6, 2012). First, a court must accept
12  all factual allegations in the complaint as true, discounting legal conclusions clothed as
13  factual allegations. *Iqbal*, 556 U.S. at 678-79; *Papasan v. Allain*, 478 U.S. 265, 286 (1986);
14  *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) ("Such allegations are not to
15  be discounted because they are 'unrealistic or nonsensical,' but rather because they do
16  nothing more than state a legal conclusion - even if that conclusion is cast in the form of a
17  factual allegation."). Second, the court must determine if these well-pleaded factual
18  allegations state "a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

19       Federal courts do not make plausibility determinations in a vacuum; it is a "context-
20  specific task that requires the reviewing court to draw on its judicial experience and common
21  sense." *Id*. A claim is plausible when the factual allegations permit "the court to draw the
22  reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678.
23  "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a
24  motion to dismiss for failure to state a claim." *Caviness v. Horizon Cmty. Learning Ctr., Inc*.,
25  590 F.3d 806, 812 (9th Cir. 2010) (citation omitted).

26  **III. Motions to Dismiss**

27       "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers
28  evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56

1   motion for summary judgment, and it must give the nonmoving party an opportunity to

2   respond." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003) (citing Fed.R.Civ.P.

3   12(b)). There are, however, several exceptions to this general rule.

4         **A. Incorporation by Reference**

5         In deciding a motion to dismiss, a district court may consider documents that are

6   integral to the complaint. *Parrino v. FHP, Inc*., 146 F.3d 699, 706 n. 4 (9th Cir. 1988)

7   (noting that where an attached document is integral to the plaintiff's claims and its

8   authenticity is not disputed, the plaintiff "obviously is on notice of the contents of the

9   document and the need for a chance to refute evidence is greatly diminished.") (citation

10  omitted), *superseded by statute on other grounds*, *Abrego v. Dow Chem. Co*., 443 F.3d 676

11  (9th Cir. 2006); *see also Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). When

12  documents contain statements that contradict allegations in an amended complaint, the

13  documents control and a district court need not "[a]ccept as true allegations that contradict

14  matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*,

15  266 F.3d 979, 988 (9th Cir. 2001); *as amended by* 275 F.3d 1187 (9th Cir. 2001); *Makua v.*

16  *Gates*, 2009 WL 3923327, at *3 (D. Haw. Nov. 18, 2009). Where a plaintiff's own

17  allegations are contradicted by other documents and matters asserted, relied upon, or

18  incorporated by reference by plaintiff in the complaint, the district court is not obligated to

19  accept the complaint's allegation as true in deciding a motion to dismiss. *Ritchie*, 342 F.3d

20  at 908; *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002).

21        Under the doctrine of "incorporation by reference," a district court may consider

22  documents that are referenced extensively in an amended complaint and accepted by all

23  parties as authentic. *Van Buskirk*, 284 F.3d at 980 (9th Cir. 2002); *Lee v. City of Los Angeles*,

24  250 F.3d 668, 688 (9th Cir. 2001). "Even if a document is not attached to a complaint, it may

25  be incorporated by reference into a complaint if the plaintiff refers extensively to the

26  document or the document forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 908.

27  The Ninth Circuit has "[e]xtended the 'incorporation by reference' doctrine to situations in

28  which the plaintiff's claim depends on the contents of a document, the defendant attaches the

1    document to its motion to dismiss, and the parties do not dispute the authenticity of the

2    document, even though the plaintiff does not explicitly allege the contents of that document

3    in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)  Thus, under the

4    incorporation-by-reference doctrine, a district court may look beyond the pleadings without

5    converting a Rule 12(b)(6) motion into one for summary judgment.

6            **B. Judicial Notice**

7            Judicial notice is another exception to the conversion rule. A district court may take

8    judicial notice of material which is either submitted as part of the complaint or necessarily

9    relied upon by the complaint or it may take judicial notice of matters of public record. *Lee*,

10   250 F.3d at 688-89; *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). A

11   district court may take judicial notice of "a fact that is not subject to reasonable dispute

12   because it . . . can be accurately and readily determined from sources whose accuracy cannot

13   reasonably be questioned . . . at any stage of the proceeding" Rule 201(b)(2), (d), Fed.R.Evid.

14   A court "must take judicial notice if a party requests it and the court is supplied with the

15   necessary information." *Snyder v. HSBC Bank, USA, N.A.*, 2012 WL 6698088, at *10 (D.

16   Ariz. Dec. 26, 2012) (quoting Fed.R.Evid. 201(c)(2)). Taking judicial notice, however, does

17   not convert a motion to dismiss into one for summary judgment. *United States v. 14.02 Acres*

18   *of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th Cir. 2008); *MGIC Idem. Corp.*

19   *v. Weisan*, 803 F.2d 500, 504 (9th Cir. 1986). A district court may properly take judicial

20   notice of publicly-filed documents. *Williamson v. Tews*, 2012 WL 6965765, at *1 n. 1 (D.

21   Ariz. Nov. 20, 2012) (citing *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th

22   Cir. 2002) (superseded by statute on other grounds) (quoting *Branch v. Tunnell*, 14 F.3d 449,

23   454 (9th Cir. 1994)); *Passa v. City of Columbus*, 123 Fed.Appx. 694, 697 (6th Cir. 2005)

24   ("[A]ll circuits to consider the issue have noted that a court may take judicial notice of at

25   least some documents of public record when ruling on a Rule 12(b)(6) motion.") (citations

26   omitted).

27           Plaintiff's Response incorporates his response to Wells Fargo Bank's Motion to

28   Dismiss and attached 29 exhibits, which include some of the pleadings and filings in the

1  State action, which establish the relevant and undisputed facts material to Defendants'
2  dismissal motion. (Doc. 46 at 1, 7) Defendants also urge the Court to take judicial notice of
3  the State-court pleadings and filings attached as exhibits to Wells Fargo's dismissal motion
4  as the Court did in its March 15, 2013 Order. (Doc. 42 at 3)

5       The Court will consider the exhibits provided by Plaintiff and Wells Fargo Bank
6  without converting Defendant's 12(b)(6) motion into a Rule 56 motion for summary
7  judgment because copies of the exhibits have been provided to the Court, are not disputed
8  by the parties, are integral to Defendants' motion and the Amended Complaint, and are
9  clearly subject to judicial notice.

10  **IV. Governing Law**

11       **A. The Fair Debt Collection Practices Act**

12       Under the FDCPA, an action may be brought "in any appropriate United States district
13  court without regard to the amount in controversy, or in any other court of competent
14  jurisdiction, within one year from the date on which the violation occurs." 15 U.S.C. §
15  1692k(d). Thus, the Arizona courts had subject matter jurisdiction to adjudicate Plaintiff's
16  counterclaim alleging numerous unfair debt collection practices under the FDCPA. *See*, *e.g.*,
17  *Grossberger v. Saldutti*, 834 F.Supp.2d 209, 215 (D.N.J. 2011) (citing *FinanceCo of Kansas,*
18  *Inc. v. Ledin*, 231 P.3d 1086 (Kan.Ct.App. 2010) (holding that the Kansas state court
19  "[c]learly . . . had subject matter jurisdiction over the [FDCPA] action")); *see also Peterson*
20  *v. United Accounts, Inc.*, 638 F.2d 1134, 1135 (8th Cir. 1981) (FDCPA provides for
21  concurrent state-federal jurisdiction and claims may be brought in state court); *Jaffe v. JP*
22  *Morgan Chase & Co.*, 2013 WL 2389825 (Az.Ct.App. May 28, 2013); *Heritage Pacific*
23  *Financial, LLC v. Monroy*, 215 Cal.App.4th 972, 156 Cal.Rptr.3d 26, 45 (Cal.Ct.App. 2013)
24  ("State courts have concurrent jurisdiction over claims under the FDCPA.").

25       It is well-settled that FDCPA liability is limited to individuals or entities who meet
26  the FDCPA's definition of "debt collector." *See*, *e.g.*, *Pollice v. Nat'l Tax Funding LP*, 225
27  F.3d 379, 403 (3d Cir. 2000) ("The FDCPA's provisions generally apply only to 'debt
28  collectors.' . . . Creditors - as opposed to 'debt collectors' - generally are not subject to the

1   FDCPA."); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir. 1996)

2   (finding that the liability for a debt collector should not be vicariously imposed on the

3   assignee who was not a debt collector under the FDCPA); *Miranda v. Field Asset Services*,

4   2013 WL 124047, at *4 (S.D. Cal. Jan. 9, 2013); *Plumb v. Barclays Bank Delaware*, 2012

5   WL 2046506, at *4 (E.D. Wash. June 5, 2012) ("[E]ven vicarious liability under the FDCPA

6   has been restricted to principals who themselves are statutory 'debt collectors.'"); *Oei v. N.*

7   *Star Capital Acquisitions, LLC*, 486 F. Supp. 2d 1089, 1097 (C.D. Cal. 2006). The FDCPA

8   defines "debt collector" as "any person who . . . in any business the principal purpose of

9   which is the collection of any debts, or who regularly collects or attempts to collect, directly

10  or indirectly, *debts owed or due or asserted to be owed or due another*. . . ." 15 U.S.C. §

11  1692a(6) (emphasis added). The FDCPA was designed to protect consumers who have been

12  victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists.

13  *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982).

14          Even if the FDCPA were applicable to Defendants on Plaintiff's State counterclaim,

15  an issue the Court does not address herein, Plaintiff's FDCPA claims are barred in this

16  federal action as explained herein.

17          **B. Claim Preclusion**

18          The related doctrines of *res judicata* and collateral estoppel limit a litigant's ability

19  to re-litigate cases and issues. "Under *res judicata*, a final judgment on the merits of an

20  action precludes the parties or their privies from relitigating issues that were or could have

21  been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). "Under collateral

22  estoppel, once a court has decided an issue of fact or law necessary to its judgment, that

23  decision may preclude relitigation of the issue in a suit on a different cause of action

24  involving a party to the first case." *Id.* (citation omitted). "*[R]es judicata* and collateral

25  estoppel not only reduce unnecessary litigation and foster reliance on adjudication, but also

26  promote the comity between state and federal courts that has been recognized as a bulwark

27  of the federal system." *Id.* at 95-96 (citation omitted).

28          Arizona courts also adhere to the doctrines of *res judicata* and collateral estoppel, and

1    a final judgment on the merits in a prior suit bars a second suit involving the same parties or

2    their privies based on the same cause of action. *Chaney Bldg. Co. v. City of Tucson*, 148 Ariz.

3    571, 573, 716 P.2d 28, 30 (Ariz. 1986). *Res judicata*, also known as claim preclusion, bars

4    not only every claim that was raised in a state court, but it also bars the assertion of every

5    legal theory or ground for recovery that might have been raised in support of the granting of

6    the desired relief. *See McClain v. Apodaca*, 793 F.2d 1031, 1034 (9th Cir. 1986). "A plaintiff

7    cannot avoid the bar of claim preclusion merely by alleging conduct by the defendant not

8    alleged in the prior action, or by pleading a new legal theory." *Hallman v. Cate*, 2011 WL

9    3267889, at *2 (N.D. Cal. July 29, 2011) (citations omitted), *affirmed by Hallman v. Cate*,

10   483 Fed.Appx. 381 (9th Cir. 2012). Thus, "[c]laim preclusion binds the parties in subsequent

11   litigation to 'every issue decided in the prior action as well as on every issue that could have

12   been decided.'" *Melchizedek v. Holt*, 792 F.Supp.2d 1042, 1054 (D. Ariz. 2011) (quoting

13   *Norriega v. Machado*, 179 Ariz. 348, 878 P.2d 1386, 1389 (Az.Ct.App. 1994)).

14          Generally, federal courts have consistently accorded preclusive effect to issues

15   decided by state courts. *Allen*, 449 U.S. at 95 (citation omitted). "The Federal Full Faith and

16   Credit Statute, 28 U.S.C. § 1738, requires that a federal court give to a state court judgment

17   the same preclusive effect as would be given that judgment under the law of the state in

18   which the judgment was rendered." *Hallman*, 2011 WL 3267889, at *3. Assuming

19   compliance with the minimum standards of due process, a state court judgment has the same

20   preclusive effect in federal court as that judgment would have in the courts of the rendering

21   state. *Clements v. Airport Authority of Washoe Cnty*., 69 F.3d 321, 328 (9th Cir. 1995)

22   (citation omitted)  Thus, in the ordinary case, so long as due process was provided, federal

23   courts would look to the law of Arizona to determine the preclusive effect to give to a prior

24   judgment in Arizona. *Id.*

25          Under Arizona law, "*any* dismissal other than a dismissal for lack of jurisdiction,

26   improper venue, or failure to join a party, is an adjudication on the merits, unless the court

27   specifies otherwise." *Soza v. El Jardin Florists, Inc*., 2009 WL 4981538, at *8 (Az.Ct.App.

28

Dec. 22, 2009) (quoting Rule 41(b), Arizona Rules of Civil Procedure.[4]) (emphasis in original); *see also Airfreight Express Ltd v. Evergreen Air Center, Inc*., 215 Ariz. 103, 158 P.3d 232 (Az.Ct.App. 2007). "A judgment or adjudication on the merits does not necessarily require a hearing or trial on the substantive issues." *Soza*, 2009 WL 4981538, at *7 (citing *4501 Northpoint LP v. Maricopa County*, 212 Ariz. 98, 101, 128 P.3d 215, 218 (Ariz. 2006) (a judgment can be "on the merits" and preclude subsequent claims even if based on stipulation or pretrial rulings).

The facts and the Arizona Court of Appeals' discussion on a similar issue in *Soza* are particularly instructive in the case *sub judice*. There, Soza brought a breach of contract and quiet title action against Miranda regarding the transfer of a business and certain real property to Miranda in exchange for money and other consideration. In consolidated appeals in multiple suits between the parties arising out of the same facts, the Arizona court addressed, *inter alia*, whether the issue of claim preclusion barred one of Soza's causes of action he previously filed in a counterclaim against Miranda that was involuntarily dismissed.

In 2005 after Miranda filed suit against Soza for breach of contract in CV2004–020098, Soza filed a counterclaim. The counterclaim asserted that, during the course of the litigation, Soza learned that Miranda sold parcels of real property belonging to Soza pursuant to a power of attorney. Soza's counterclaim alleged that Miranda had falsified the power of attorney and misrepresented his authority to transfer the various parcels of real property and the business. When Miranda voluntarily dismissed his own lawsuit, he also filed a motion to dismiss Soza's counterclaim on the grounds that it was malicious and untimely

---

[4]Arizona Rule of Civil Procedure 41(b) states, in relevant part:

[U]nless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, *operates as an adjudication upon the merits*.

Rule 41(b), Ariz.R.Civ.P.

because it was a compulsory counterclaim that should have been filed with Soza's answer. Soza did not respond to the dismissal motion.

The Arizona court rejected Soza's argument that the dismissal of his counterclaim in CV2004–020098 was not an adjudication on the merits under Ariz.R.Civ.P. 41(b), stating:

> [C]ontrary to Soza's argument, [Rule 41(b)] clearly establishes that *any* dismissal other than a dismissal for lack of jurisdiction, improper venue, or failure to join a party, is an adjudication on the merits, unless the court specifies otherwise. Miranda's motion to dismiss Soza's counterclaim in CV2004-020098 was based on the argument that the counterclaim was barred because it was a compulsory counterclaim under Ariz. R. Civ. P. 13(a) and was not raised in Soza's answer. The judgment of dismissal did not specify that the dismissal was without prejudice. None of the exceptions for application of the rule therefore applies, and the dismissal is deemed to be an adjudication on the merits. *Phillips v. Ariz. Bd. of Regents*, 123 Ariz. 596, 598, 601 P.2d 596, 598 (1979) (order not specifying whether dismissal was with prejudice is adjudication on merits regardless of the reason for the dismissal).

*Soza*, 2009 WL 4981538, at *8. The legal principle of issue preclusion is dispositive of Plaintiff's FDCPA claims against Defendants in this federal action.

## C. Due Process of Law

The Fifth Amendment of the United States Constitution states, in relevant part, that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law[.]" U.S. Const. Amend V. The Constitution's Fourteenth Amendment bars "any State [from] depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. "The Due Process Clause of the Fourteenth Amendment encompasses two types of protections: substantive rights (substantive due process) and procedural fairness (procedural due process)." *Sanchez v. City of Fresno*, 2013 WL 2100560 (E.D.Cal. May 14, 2013) *Zinermon v. Burch*, 494 U.S. 113, 125-28 (1990). Procedural due process provides "a guarantee of fair procedure in connection with any deprivation of life, liberty, or property" by the government. *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). Substantive due process "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Id*. (internal quotation marks omitted); *see also Troxel v. Granville*, 530 U.S. 57, 65 (2000) ("We have long recognized that the [Fourteenth] Amendment's Due Process Clause, like its Fifth Amendment counterpart,

1    'guarantees more than fair process.'").

2          "Due process of law is secured against invasion by the federal government by the

3    Fifth Amendment and is safe-guarded against state action in identical words by the

4    Fourteenth [Amendment]." *Betts v. Brady*, 316 U.S. 455, 462 (1942); *see also Bingue v.*

5    *Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008) ("The Fifth Amendment's due process clause

6    only applies to the federal government."); *Castillo v. McFadden*, 399 F.3d 993, 1002  n. 5

7    (9th Cir. 2005) ("The Fifth Amendment prohibits the federal government from depriving

8    persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations

9    without due process by the several States.").

10         Title 42 U.S.C. § 1983 provides a statutory vehicle for vindicating federal rights

11   conferred elsewhere, but it does not create any substantive rights. *Alright v. Oliver*, 510 U.S.

12   266, 271 (1994). Section 1983 allows individuals to recover damages and other relief for

13   deprivations of constitutional rights that occur under color of state law. *Parratt v. Taylor*, 451

14   U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-

15   31 (1986).  To state a claim under § 1983, a plaintiff must allege a violation of rights secured

16   by the Constitution or laws of the United States and must show that the alleged deprivation

17   was committed by a person acting under the color of state law. *Long v. County of L.A.*, 442

18   F.3d 1178, 1185 (9th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)); *see also*

19   *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988).

20         Neither the Fifth Amendment's nor the Fourteenth Amendment's due process clause,

21   however, applies to private actors, except in exceptional circumstances. *See Rank v. Nimmo*,

22   677 F.2d 692, 701 (9th Cir. 1982) ("The Due Process Clause of the Fifth Amendment applies

23   to actions of the federal government and not to individual activities of private actors[, unless]

24   . . . the action of the latter may be fairly treated as that of the [government] itself."); *Jackson*

25   *v. Metro. Edison Co.*, 419 U.S. 345, 349 (1974) (holding that private conduct is not subject

26   to the requirements of the Fourteenth Amendment, no matter how discriminatory or

27   wrongful); *Geneva Towers Tenants Organization v. Federated Mortgage Investors*, 504 F.2d

28   483, 487 ("The Due Process Clause of the Fifth Amendment applies to and restricts only the

1    federal government and not private persons.") (9th Cir. 1974) (citation omitted).

2            Additionally, a person has acted under "color of state law" when the individual

3    "exercised power possessed by virtue of state law and made possible only because the

4    wrongdoer is clothed with the authority of state law." *West*, 487 U.S. at 49-50 (citation and

5    internal quotation marks omitted). "[G]enerally, a public employee acts under color of state

6    law while engaged in his official capacity or while exercising his responsibilities pursuant

7    to state law." *Id*. at 50 (citation omitted). Generally, courts have used four different tests to

8    determine whether private action can be attributed to the state: "(1) public function; (2) joint

9    action; (3) governmental compulsion or coercion; and (4) governmental nexus. Satisfaction

10   of any one test is sufficient to find state action, so long as no countervailing factor exists."

11   *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir.2003). The application of these tests is a

12   "necessarily fact-bound inquiry." *Lugar v. Edmondson Oil Co., Inc*., 457 U.S. 922, 939

13   (1982).

14   **V. Discussion**

15           Even assuming *pro se* Plaintiff were granted another amendment to allege Section

16   1983 claims for violations of his rights under the Fifth or Fourteen Amendment, the

17   amendment would be futile. Neither Velocity nor Gurstel was part of the federal government

18   at all material dates herein. Each is, and was, a private legal entity. The facts alleged in the

19   Amended Complaint, and their reasonable inferences, do not indicate or suggest that Velocity

20   and Gurstel were engaged in a public function or joint governmental action; joined in any

21   governmental compulsion or coercion; or there was governmental nexus to Velocity's or

22   Gurstel's actions against Plaintiff. The Court finds that Plaintiff's claims under the Fifth

23   Amendment fail to state a plausible claim and are foreclosed as a matter of law.

24           As the *Soza* case demonstrates, the dismissal of Plaintiff's various FDCPA counts

25   alleged in his State counterclaim by the Pinal County Superior Court operated as an

26   adjudication on the merits, because it was not dismissed without prejudice and the reason for

27   the dismissal was other than a dismissal for lack of jurisdiction, improper venue, or failure

28   to join a party. 2009 WL 4981538, at *8. Because there was not an appeal of the Superior

1  Court's dismissal of Plaintiff's counterclaim, he is barred by the doctrine of issue preclusion

2  and the federal Full Faith and Credit Statute, 28 U.S.C. § 1738, from relitigating any FDCPA

3  violation out arising out of Gurstel's collection of Plaintiff's credit card debt to Velocity. *See*

4  *Allen*, 449 U.S. at 94-95 (citation omitted); *Hallman*, 2011 WL 3267889, at *3. Despite

5  Plaintiff's contention he was denied a "full and fair opportunity to defend and to present [his]

6  non-compulsory counterclaims," the State record belies this unsupported argument.

7  Plaintiff's failure to comply with State substantive and procedural law does not equate to a

8  denial of his full and fair opportunity to defend or prosecute a claim in the State action.

9          The Amended Complaint's conclusory allegations are insufficient to state a plausible

10  claim under Rules 8(a) and 12(b)(6), Fed.R.Civ.P. *See Schucker v. Rockwood*, 846 F.2d 1202

11  (9th Cir. 1988). In *Schucker*, the Ninth Circuit affirmed the dismissal of the action with

12  prejudice because it agreed with the district court's conclusion that "Schucker's conclusory

13  allegations that [the judge] conspired with the law firms [were] insufficient to support his

14  section 1983 claims." *Id.,* at 1205; *see also Branson v. Nott*, 62 F.3d 287, 291 (9th Cir. 1995)

15  (dismissing for lack of jurisdiction where Section 1983 claim amounted "to nothing more

16  than an impermissible collateral attack on prior state court decisions") (citing *MacKay v.*

17  *Pfeil*, 827 F.2d 540, 543 (9th Cir. 1987); *Thompson v. Santa Cruz County Human Services*

18  *Dept.*, 2013 WL 1750960 (N.D. Cal. April 23, 2013)).

19  **VI. Conclusion**

20          *Pro se* Plaintiff was forewarned that even though his pleadings are held to a less

21  stringent standard than those prepared by attorneys, *Rand v. Rowland*, 154 F.3d 952, 957

22  (9th Cir. 1998) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)), *pro se* litigants must

23  "abide by the rules of the court in which he litigates." *Carter v. Commissioner of Internal*

24  *Revenue*, 784 F.2d 1006, 1008 (9th Cir. 1986). (Doc. 6 at 2)  *Pro se* litigants "must meet

25  certain minimal standards of pleading." *Ticktin v. C.I.A.,* 2009 WL 976517, at *4 (D. Ariz.

26  April 9, 2009) (citation omitted). "A *pro se* complaint that . . . fails to plainly and concisely

27  state the claims asserted . . . falls short of the liberal and minimal standards set out in Rule

28  8(a)." *Id.* (citation and internal quotation marks omitted); *see also Vega v. JPMorgan Chase*

1  *Bank, N.A.*, 654 F.Supp.2d 1104, 1111 (E.D.Cal. 2009) (holding that the Rule 8 requirement

2  "applies to good claims as well as bad, and is the basis for dismissal independent of Rule

3  12(b)(6)") (citation omitted).

4         Based on the foregoing,

5         **IT IS ORDERED** that Defendants' Motion to Dismiss Amended Complaint, doc. 29,

6  42, is **GRANTED**. Defendants Velocity Investments, LLC and Gurstel Chargo, P.A. are

7  dismissed with prejudice from this action. The Clerk is kindly directed to enter judgment in

8  favor of Defendants, against Plaintiff, and terminate this action.

9         Dated this 22nd day of July, 2013.

10

11

12                        Lawrence O. Anderson
                          United States Magistrate Judge